UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60215-CIV-SEITZ/SIMONTON

FLEXITEEK AMERICAS, INC., a Florida
corporation, and FLEXITEEK INTERNATIONAL
AS, a foreign corporation,

    Plaintiffs,
vs.

PLASTEAK, INC., an Ohio corporation, and
PLASDECK, INC., an Ohio corporation,

    Defendants.
_____/

## DEFENDANTS', PLASTEAK, INC. AND PLASDECK, INC., MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants, Plasteak, Inc. and Plasdeck, Inc. (collectively, "Plasteak"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby moves this Honorable Court for the entry of summary judgment against Plaintiffs, Flexiteek Americas, Inc. and Flexiteek International AS (collectively, "Flexiteek") and as grounds therefore would state:

### INTRODUCTION

Plaintiffs claim that the Defendants' products are infringing the claims of Whitaker Patent U.S. 6,985,881 B1 (Statement of Facts ¶3) (the "Original Patent") as modified by Ex-Parte Reexamination Certificate U.S. 6,895,881 C1 dated December 6, 2011 (attached to the Statement of Facts as Exh. A and G, respectively). (Since some of the claims of the Reexamination Patent incorporate Claim 1 of the original patent we refer to both collectively as the "'881 Patent."). The Original Patent had one claim which was cancelled by the United States Patent and Trademark Office ("USPTO"), and on December 6, 2011 a reexamination certificate was issued which added new claims 2 through 29. Thus, claims of patent infringement cannot

exist prior to December 6, 2011. See Cohen v. United States, 487 F.2d 525 (Fed. Cl. 1973) ("It is axiomatic that there can be no infringement of a patent prior to its issuance.  Nor can there be infringement of a claim added to a reissue patent unless the infringing activities occurred after the reissuance of the patent.") (citations omitted).

The steps to determine if a product infringes a patent claim are, first, the claim language must be interpreted in light of the claim language, the specification of the patent, the prosecution history and the prior art.  See North American Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1344 (Fed. Cir. 2005).  In this case, three claim terms were disputed by the parties and interpretation has been made by the Court, being "Longitudinal Slots", "Tightly Curved" and "Interconnected".  See Order on Claims Construction [D.E. 178]. For purposes of this motion, Defendants will also address the element "Male/Female Connection Members".

The second step, after interpretation of the claim language, is applying the claim language to the accused product.  See North American Container, Inc., 415 F.3d at 1344. In order for a product to infringe, it must have every limitation or claim element that is contained within the claim.  See id.  Thus, if a claim has five elements or limitations (we use the terms "limitations" and "elements" interchangeably) then all five must be present for a product to infringe.  If one, or more, element(s) is missing the Court can terminate its investigation as to that claim as there cannot be infringement.  The Court looks to see if the element is present directly, or if not directly present, is the element present by virtue of the Doctrine of Equivalents. As will be demonstrated below, Defendants' products do not infringe directly nor by equivalence the '881 Patent and the Court should determine that Defendants are entitled to summary judgment in their favor that no infringement exists.

A Statement of Material Facts to Which no Genuine Triable Issue Exists in Support of the Motion for Summary Judgment is attached hereto as Exhibit "1" citations to which shall be referred to hereinafter as "Statement of Facts ¶___" (hereinafter "Statement of Facts"). The Declaration in Support of Motion for Summary Judgment, executed by William Gribble is attached hereto as Exhibit "2" citations to which shall be referred to hereinafter as "Declaration of Gribble ¶ ___" (hereinafter "Declaration of Gribble"). A claims chart prepared by counsel for the Defendants is attached hereto as Exhibit "3" citations to which shall be referred to hereinafter as "Chart___" (hereinafter "Chart").

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when "the pleadings ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether " 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Anderson, 477 U.S. at 251–52, 106 S.Ct. 2505).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and

3

admissions that specific facts exist demonstrating a genuine issue for trial. See Fed. R.Civ.P. 56(c), (e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. Anderson, 477 U.S. at 252, 106 S.Ct. 2505; see also Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

Patent suits enjoy no special consideration in determining whether issues of fact preclude summary judgment. See Johnston v. IVAC Corp., 885 F.2d 1574 (Fed. Cir. 1989). "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence fails to establish a material issue of fact essential to the patentee's case." Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043.1046 (Fed. Cir. 2001). For example, summary judgment is appropriate in a patent infringement case when a properly interpreted claim with an uncontested description of the accused device reflects the absence of a genuine issue of material fact. See D. M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1573 (1985). Once an accused infringer seeking a declaration of noninfringement sets forth material suggesting non-infringement of the patentee's claim, "the burden shifts to the patentee to provide materials that at a minimum raise actual doubt concerning potential infringement." Ontario Die Co. of Am. v. Indep. Die Assoc. Inc., No. 89-CV-30035-PH, 1990 WL 300899 at *7 (E.D.Mich. Aug. 24.1990). Thus, the "motion of an accused infringer for summary judgment on the ground of noninfringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard of infringement." See Honston v. IVAC Corp., 885 F.2d 1574, 1577 (Fed. Cir. 1989).

4

## ARGUMENT

Following the reexamination of the Original Patent (and which ultimately resulted in the '881 Patent), Flexiteek commenced these proceedings against Plasteak, seeking a permanent injunction and damages for infringement of the '881 Patent (Counts I to III of the Complaint) as well as damages and injunction for an alleged violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count IV of the Complaint).  Plasteak products do not have at least four elements of the claims that are contained in the '881 Patent.  Plasteak's products have neither the elements of "interconnected", "tightly curved", nor "longitudinal slots", as those elements have been interpreted by the Court in this case. Additionally the element of "Male Connection Member/Female Connection Member" is not found in any of Plasteak's products when compared to the Plaintiffs' own description of the accused devices and it is not found in the Defendants' products.  Further, the alleged false statements on Plasteak's website which Flexteek purports to form the basis of its claim under FDUTPA, are not false; the statements are historical in nature and, in fact, there is no genuine dispute that the statements are factually accurate.  Accordingly, and for the reasons expressed in greater detail below, Plasteak is entitled to summary judgment on all counts of the Complaint.

To simplify the analysis, for purposes of the Summary Judgment Motion, four elements of the claims are shown not to be present in the alleged infringing product:

- "Male Connection Member/Female Connection Member" which is present in claims 3 to 5, and  22 through 29;

- "Interconnected" which is present in claims 1 through 21;

- "Tightly Curved" which is present in claims 2, 9 through 21, and 26 through 29; and

5

- "Longitudinal Slots" which is present in all claims 1 through 29. (Note, claim 1 has been cancelled and cannot be infringed).

For the Court's convenience, Defendants have prepared a Chart (attached hereto as Exhibit 3) outlining where the elements above are contained in the claims.

The Male/Female connection means are described and shown in the Original '881 Patent at Col 4 Ln 11-26, Figs 5 b, c, f, g, h and i. The use of Male/Female connectors in any product of the Defendants has not been established by Plaintiff. Nor do Male/Female connection members exist in any product of Defendants. See Declaration of Gribble, ¶ 14, Exh. A, Index of Photographs and photographs of products. Thus, when applying the claim limitation of male/female connectors to the alleged infringing product, there can be no direct infringement, nor any infringement by the doctrine of equivalents since the structure is entirely absent. The aftersaid lack of element eliminates claims 3 to 5, as well as 22 through 29.

Next, the element of "Tightly Curved" must be addressed. Plaintiff has provided no proof that any of the Defendants' products are made or used at any angle of curvature exceeding the inherent curvature of the product. This element being totally devoid from the record created by Plaintiff and what is the uncontested statement of Defendants as supported in Declaration of Gribble ¶ 13, requires the determination that claims 2, 9 through 21 and 26 through 29 cannot be infringed. Since there is no evidence to support any application of this element to the Defendants' products there cannot be any application of the Doctrine of Equivalents.

This leaves us with only three remaining claims to consider claims 6, 7 and 8, all which are dependent on claim 1 and all three having the element of "Interconnection" and "Longitudinal Slots". Both elements would have to be present in order for a product to infringe any of these three claims.

These points are described in greater detail in turn below.

### I. **<u>Plasteak's products do not infringe the '881 Patent.</u>**

Plasteak is entitled to summary judgment on Counts I-III of the Complaint for Plaintiffs' various theories of patent infringement. As succinctly explained by the Federal Circuit:

> Infringement analysis is a two-step process: First, the court determines the scope and meaning of the patent claims asserted ... [and secondly,] the properly construed claims are compared to the allegedly infringing device. Step one, claim construction, is a question of law . . . . Step two, comparison of the claims to the accused device, is a question of fact and requires a determination that every claim limitation or its equivalent be found in the accused device.

<u>North American Container, Inc. v. Plastipak Packaging, Inc.</u>, 415 F.3d 1335 (Fed. Cir. 2005) (citations and quotation marks omitted). In the present case, the Court has already determined the scope and meaning of the patent claims asserted pursuant to its Order on Claims Construction [D.E. 178] and Plaintiffs have provided a description of the accused devices. Accordingly, the only judicial labor remaining for the Court is to compare the claims to the accused devices.

As reflected in the Court's Order on Claims Construction, the three elements of the '881 Patent, which the Court interpreted are not contained in Plasteak's products. All of the claims of the '881 Patent require the presence of longitudinal slots combined with either (1) the interconnectedness of the planks, or (2) the male/female connectors[1]. Thus, if the Court determines that Plasteak's products do not interconnect, there can be no finding of infringement as to Claims 1-21 and if there is no male/female connector member, there can be no finding of infringement as to Claims 22-29 as well as 3-5. If the Court determines that Plasteak's products also do not tightly curve, there can be no finding of infringement of Claims (2, 9-21 and 26-29). Of course, if the Court finds an absence of longitudinal slots, Plasteak's products cannot be

---

[1] The male/female connection member is really a further requirement of interconnect, a subset, which is in claims 3-5 and 22-29. For male/female connection member, see the Original '881 Patent Exhibit 1, at Col 4 Ln 8-23, Figs 5 b, c, f, g, h, i and j.

7

found to infringe <u>any</u> of the claims regardless of whether Plasteak's products have the ability to interconnect or tightly curve.

Plaintiffs' description of the accused devices followed by a comparison of the claims to the description are addressed below.

### A. **Plaintiffs' descriptions of the accused devices.**

Plaintiffs rely entirely on their expert, Dr. Frank N. Jones for descriptions of the accused devices. See Plaintiffs' Response to Interrogatory No. 24. That is, although Thomas Jacques, the designated representative for both Plaintiffs has testified that Plasteak's products have a "smoother" underside than Plaintiffs' products (Statement of Facts Exh. H - Jacques 4/3 Depo at 28:9-11), Plaintiffs ultimately rely entirely on their attorneys and expert for their analysis of patent infringement in this case (Statement of Facts ¶9, Exh. H - Jacques 4/4 Depo at 24:17-24, 64:7-25, 65:1-25, 66:1-5). The Expert Report of Dr. Frank Jones provides the following description of the accused devices:

> The backs of the two "Classic off white line" specimens have clearly visible ridges and valleys running essentially parallel to the simulated caulk line (parallel to the 2" dimension of the 2" x 6" specimen). Assuming (as above,) that these specimens were cut from rolls of the PlasDECK product, the ridges and valleys are longitudinal with respect to the product. The ridges and valleys are very closely spaced and essentially cover the entire back. At present, I have not been able to measure their height/depth or to quantify their spacing. As a very rough estimate, there appear to be 50 to 100 ridges and valleys per inch. The rough texture of the backs is easily felt.

(Statement of Facts ¶¶ 10-11, Exh. I - Jones Report at ¶ 22). Dr. Jones also observed four additional specimens:

> Ridges and valleys are not visible on the backs of the other four specimens. Instead, these specimens have long depressions in the back that correspond to the simulated caulk lines in the front. These depressions are fairly deep relative to the thickness of the specimens, and they run parallel to the sides of the 2" dimension for the entire 2" of panel. If, as believed, these specimens were cut from rolls of PlasDECK products, the depressions run longitudinally along the long dimension

8

> of the roll. The backs also have a rough surface of smaller bumps and depressions. Such a surface might (or might not) have resulted from application of a textured primer coating. It is rough to the touch.

(Statement of Facts ¶¶ 10, 12, Exh. I - Jones Report at ¶ 23).

### B. Plaintiffs have failed to describe the accused devices as having male/female connection members or as having a feature to interconnect.

The Court has defined "interconnected" as "joined together so as not to separate." The element of male/female connection is a subset of "interconnected" and is described and shown in the Original '881 Patent at Col 4 Ln 11-26, Figs 5 b, c, f, g, h, i and j, see Statement of Facts ¶3, Exh. A. As set forth above, Dr. Jones does not describe any feature of Plasteak's products with regard to interconnection nor does he offer an opinion as to whether the accused devices have the ability to interconnect, (Statement of Facts Exh. J, - Jones Depo. at 86:9-25, 87:1-25, 88:1-25, 89:1-13). Further, as reflected in the edge profile photographs, see Declaration of Gribble, Exhibit A, the accused devices simply abut or lap, but do not interconnect. Accordingly, Plaintiffs have entirely failed to describe the way in which they claim the accused products are interconnected and Plasteak is entitled to summary judgment as to non-infringement of Claims 3-8, as well as 2-29 of the '881 Patent. Also see Declaration of Gribble at ¶¶12, 14.

### C. Plaintiffs have failed to describe the accused devices as having the ability to tightly curve.

The Court has defined "tightly curved" as "curvature to an angle exceeding the inherent curvature of the material." As set forth above, Dr. Jones does not describe any feature of Plasteak's products with regard to <u>any</u> type of curvature nor does he offer an opinion as to whether the accused devices have the ability to curve at all, much less tightly curve. Accordingly, Plaintiffs have entirely failed to describe the way in which they claim the Accused Products are interconnected and Plasteak is entitled to summary judgment as to non-infringement

9

of the remainder of the Claims of the '881 Patent (Claims 2, 9 through 21, and 26 through 29). Also see Declaration of Gribble at ¶13.

### D. **Plaintiffs have failed to describe the accused devices as having longitudinal slots.**

Although the Court's analysis should be complete after a consideration of the foregoing analysis of the elements of the '881 Patent *not* described by the Plaintiffs as being parts of Defendants' products, Defendants nonetheless submit that its products do not contain an element common to *every* claim of the '881 Patent—longitudinal slots. After offering no description of the accused devices to enable the Court to determine whether the accused devices interconnect or are tightly curved (and therefore, the accused devices do not infringe any claim of the '881 Patent), Dr. Jones sets forth a distorted theory on how to establish that the accused devices have longitudinal slots. The term "longitudinal slot" is used in every claim in the Patent and, therefore, whether the accused devices have longitudinal slots is, itself, dispositive of the infringement analysis in this case. Specifically, each claim of the '881 Patent requires the presence of longitudinal slots.

Pursuant to its Order on Claims Construction [D.E. 178], the Court has defined "longitudinal slot" as follows:

> Grooves spaced relatively close together that run parallel to each other for the length of the planks or sheet, wherein the grooves have a depth and width of a material percentage of the planks' or sheets' thickness such that the grooves materially increase the ability to curve and the surface area for adhesion.

Now, having the claim construed, the Court's inquiry turns to a comparison of the claim to the accused device.

Contrary to the Court's construction of the term longitudinal slots, Dr. Jones determined that the definition of the term "doesn't set any limits on the size, the dimensions of the slots"

10

(Statement of Facts Exh. J - Jones Depo. at 57:15-25) and that any variation in the thickness of the material would constitute a slot even down to the level of a nanometer (Statement of Facts Exh. J - Jones Depo. at 65:20-25, 66:1-5). With regard to the "Classic off white line" specimens, Dr. Jones opined that longitudinal slots were observable "with the electron microscope and visually" (Statement of Facts Exh. I - Jones Report at ¶¶ 24), see. With regard to the latter four specimens, although he failed to take any type of measurements, Dr. Jones opined that the "longitudinal depressions observed visually . . . qualitatively serve the same purposes as the longitudinal slots claimed in the '811 patent." (Statement of Facts Exh. I Jones Report at ¶ 25). Dr. Jones also considered "a recent sample of PlasDeck Aged teak" and electron microscopic images of same (Statement of Facts Exh. I - Jones Report at ¶¶ 19, 40), and opined that this sample also had longitudinal slots (Statement of Facts Exh. J - Jones Depo. at 34:8-16); Dr. Jones did not himself create the electron microscopic images or even the pictures of the sample nor did he verify the accuracy of the images (Statement of Facts ¶13, Exh. J - Jones Depo. at 24:21-24, 26:6-25).

Of course, the Court's definition, requiring "grooves [that] have a depth and width of a material percentage of the planks' or sheets' thickness" stands in stark contrast to Jones' overbroad interpretation of the term. Ultimately, the Court must determine whether Plaintiffs' description of the accused device falls within its construction of the term "longitudinal slot".

### i. **The Classic Off-White samples do not have longitudinal slots.**

As set forth above, the description of the classic off-white samples includes ridges and valleys that "clearly visible", "closely spaced", and "essentially parallel." Although Dr. Jones did not measure the height or depth of the ridges or valleys, he roughly estimated there to be 50 to 100 ridges and valleys per inch. Thus, the ridges and valleys are between 1/50 to 1/100 of an

inch wide with no substantial depth. Without any measure of depth, the accused device clearly falls outside the claim as defined by the Court. Further, Plasteak is entitled to summary judgment because no reasonable jury would determine that 1/50 to 1/100 of an inch is a material percentage of the plank's or sheets' thickness such to materially increase the ability to curve and the surface area for adhesion.

### ii. The other four specimens do not have longitudinal slots.

Dr. Jones describes the other four samples as including long, fairly deep, parallel depressions that correspond to certain simulated caulk lines on the front of the specimens. Tellingly, for these four sampels, Dr. Jones gives no indication of the width with which these "depressions" are set apart, causing Plaintiffs' undisputed product description to fall outside the claims as defined by the Court. In any event, as demonstrated by the photographs of Defendants' complete product line, see Declaration of Gribble, Exh. A, caulk lines are approximately two inches apart from each other on each six-inch wide plank; thus, even if a depression existed on the back side of the caulk lines which Defendants do not concede exist, there would be a total of two depressions two inches apart from each other on each six-inch wide plank. Accordingly, even had Plaintiffs described the other four specimens as having depressions with any width between them, Plasteak is entitled to summary judgment because no reasonable jury would determine that two immaterial depressions of nanometer dimension (one billionth of a meter), separated by two inches on a six-foot wide plank can materially increase the ability of the planks to curve and the surface area for adhesion.

### iii. The PlasDeck Aged Teak sample does not have longitudinal slots.

Finally, Dr. Jones considered pictures and electron microscope images of a specimen of "a recent sample of PlasDeck Aged teak" in his consideration as to the existence of longitudinal

slots in Defendants' products. Dr. Jones opined that this last sample contained longitudinal slots because there was no depth limitation and, therefore, even an imperfection of even a nanometer in depth (i.e., 1/1,000,000,000 of a meter)[2], see Statement of Facts ¶12, Exh. J, would constitute a slot. Interestingly, Dr. Jones was unable, when viewed through an electron microscope, to distinguish between the purported "slots" and other artifacts which may have been present on the sample used for the image.[3] The Court's construction of the term "longitudinal slots" clearly requires grooves with a material depth. No reasonable jury can or would determine that virtually indecipherable markings found on an electron microscope image at 1/1,000,000,000 (or 1/10,000,000) of a meter would constitute grooves of a material depth for purposes of the definition of the term "longitudinal slots".

### iv. There is no genuine dispute that Plasteak's products do not have longitudinal slots.

Based on a comparison of Plaintiffs' own description of the accused devices with the Court's claims construction, there should no genuine dispute that Plasteak's products do not contain longitudinal slots and, therefore, Plasteak is entitled to summary judgment as to non-infringement of the '881 Patent. See Declaration of Gribble ¶15. Also see photographs of Defendants products, Exh. A to the Declaration of Gribble.

### E. Defendants' products do not contain equivalent elements of the claims of the '881 Patent.

Having determined that Defendants products are outside of the literal scope of the '881 Patent, it should be made clear that Defendants' products also do not contain equivalent elements of the claims in the '881 Patent. The Doctrine of Equivalents applies when an element is literally

---

[2] Dr. Jones later said that he would prefer the dimension of $1/10^{-7}$ of a meter or 1/10,000,000 (one ten millionth of a meter).

[3] Dr. Jones was unable to be sure if what he is seeing is a groove, a ridge or a dispersing of different materials or dyes. See Statement of Facts Exh. J - Jones Deposition at 24: 21-25, 25: 1-7, 26: 16-25, 29: 2-12, 31: 7-25.

missing but is supplied by an equivalent substitute. See Deere & Co. v. Bush Hog, LLC, 703 F.3d 1349, 1356-57 (Fed. Cir. 2012). More specifically, if an element is not directly present but is presumed present by virtue of an insubstantial or almost immaterial change, infringement may be found. See Valmont Industries, Inc. v. Reinke Manufacturing Co., 983 F2d 1039, 1043 (Fed. Cir. 1993). However, it should be cautioned that:

> [t]hough the doctrine of equivalents is designed to do equity, and to relieve an inventor from a semantic strait jacket when equity requires, it is not designed to permit wholesale redrafting of a claim to cover non-equivalent devices, i.e., to permit a claim expansion that would encompass more than an insubstantial change.

Perkin-Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528, 1532 (Fed. Cir. 1987).

In the present case, Plaintiffs have completely failed to describe the features of Defendants' products that infringe the literal elements of the claims of the '881 Patent much less any equivalent substitutes. Certainly, no mention is made of elements equivalent to "interconnect" or "tightly curved" and no reasonable jury would conclude that Dr. Jones' purported observation of imperfections at the molecular level would constitute an immaterial or insubstantial substitute for "longitudinal slots," which require material depth.[4] Accordingly, the undisputed facts demonstrate that Plaintiffs would not be entitled to any relief under the Doctrine of Equivalents in this case. Defendants are entitled to summary judgment in their favor on Counts I-III of the Complaint.

## II.     **Plasteak has not violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).**

Flexiteek is not entitled to relief under FDUTPA because there is no genuine dispute that the statement made on Plasteak's website is untruthful. In order to establish an entitlement to

---

[4] As defined by the Court and illustrated in Fig. 6 of the '881 Patent, see Statement of Facts, Exh. A.

14

relief under FDUTPA, Plaintiffs must establish: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. See Washington v. LaSalle Bank Nat'l Assoc., 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011). With regard to the first element, this Court has stated:

> Under FDUTPA, a deceptive practice is one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

Id.

Plaintiffs aver that Plasteak violated FDUTPA by including the following allegedly false statements on their website:

Statement 1:

> Upon re-examination of this patent, the U.S. Patent Office has rejected patent #6,895881 (the " '881 Patent") on two counts with the conclusion that the patent does not provide sufficient parameters to demonstrate any uniqueness or originality of their product when compared to earlier patents. The rejection of the '881 Patent means that Flexiteek no longer has a valid U.S. Patent to infringe upon!

Statement 2:

> PlasDECK, Inc. has recently received notice from the U.S. Patent Office stating that the U.S. patent held by Derek Whitaker and used by the Norwegian synthetic decking company, Flexiteek International AS, has been rejected. Upon re-examination of this patent, the U.S. Patent Office has rejected patent #6,895,881 (the " '881 Patent") with the conclusion that the patent does not provide sufficient parameters to demonstrate any uniqueness or originality of their product…Because Flexiteek will no longer have a valid U.S. patent to infringe upon, PlasDECK and PlasTEAK expect that this ruling will exonerate them from the patent litigation that Flexiteek has been pursuing against them. In the meanwhile, since the issues in this patent case refer to the underside of the decking material, PlasDECK will be offering a product with an embossed bottom to eliminate any remote possibility of infringement… "It's been a real battle of David versus Goliath," says Bill Gribble, President of PlasDECK, Inc. "From the first days of its development, we have created PlasDECK to be the next generation of synthetic decking, to be completely different from anything else on the market, and to perform better than the first generation products.

15

See Statement of Facts ¶¶15, 16, Exhs., L and M. Statement 1 is reflected on a portion of Plasteak's website attached to the Complaint as Exhibit G [D.E. 1-9], which is a timeline/outline of the patent litigation between the parties. The specific statement referenced by Plaintiffs is contained under an entry entitled "January 29, 2010 U.S. Patent Office Rejects the Whitaker Patent Used by Flexiteek." The entry for January 29, 2010 complained of by Plaintiffs is factually accurate. There is no genuine dispute that, on or about, January 29, 2010, the USPTO mailed its office action to Plasteak notifying them that the Original Patent was rejected for obviousness [D.E. 77-5 at 46]. It should be axiomatic that, in most instances, a true statement cannot mislead consumers or offend established public policy. Indeed, even assuming arguendo that Plaintiffs' position is that Statement 1 is literally true, but misleading, Plasteak is still entitled to summary judgment because Plaintiffs have "provided no survey evidence or expert testimony regarding customer deception." See Suntree Technologies, Inc. v. EcoSense Intern., Inc., 802 F. Supp. 2d 1273, 1288 (M.D. Fla. 2011) (determining that FDUTPA claim rises and falls on analysis of claim brought under the Lanham Act for false advertising).

Statement 2 is a press release dated February 8, 2010, obtained from Plasteak's website and attached to the Complaint as Exhibit H [D.E. 1-10]. In addition to the factually accurate statement regarding the rejection of the Original Patent, Statement 2 also makes forward-looking statements regarding the earlier litigation and Plasteak's offering of a different product. As reflected above, as of the date of the press release, the Original Patent was rejected by the USPTO and Plasteak has failed to provide any survey evidence or expert testimony regarding customer deception. Further, it is unclear how Plasteak's statements regarding their future expectations regarding their products and the outcome of the earlier litigation is misleading or offends established public policy.

Ultimately, Plaintiffs have altogether failed to present or provide any evidence which would entitled them to relief under FDUTPA. Given that there is no genuine dispute that the statements described above are factually accurate and there is no survey or expert evidence demonstrative consumer deception, Plasteak is entitled to summary judgment on Count IV of the Complaint for FDUTPA.

## CONCLUSION

Based on the aforesaid, there have been no material facts presented by Plaintiffs that infringe on any of the claims of the '881 Patent after reexamination has occurred, by any actions of the Defendants or that any of Defendants' products infringe any of the claims of the '881 Patent. Further, there has been no FDUTPA violation shown. Accordingly Defendants are entitled to Summary Judgment as to all counts of the Complaint.

Respectfully submitted,

/s/ Robert E. Pershes
Robert E. Pershes, Esquire
Florida Bar No. 301906
Vijay G. Brijbasi, Esquire
Florida Bar No. 15037
**ROETZEL & ANDRESS, LPA**
350 Las Olas Blvd.
Las Olas Centre II, Suite 1150
Fort Lauderdale, FL  33301
Tel.:  (954) 462-4150
Fax:  (954) 462-4260
E-mail: rpershes@ralaw.com
AND
Ronald S. Kopp, Esq. (0004950)
ROETZEL & ANDRESS
222 South Main Street, Suite 400
Akron, Ohio  44308
Telephone: (330) 376-2700
Facsimile: (330) 376-4577
Email: rkopp@ralaw.com

7430478 _3

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 23rd day of August 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day via transmission of Notices of Electronic Filing generated by CM/ECF to: Michael Santucci, Esq. (mis@500law.com; docketing@500law.com; joanna@500law.com) , and Daniel Devine, Esq. (ddevine@500law.com, Attorneys for the Plaintiff, Santucci Priore, PL, 200 South Andrews Ave., Suite 100, Fort Lauderdale, FL 33301; Scott Smiley, Esq. (scott@conceptlaw.com), and Mark C. Johnson, Esq. (Mjohnson@ConceptLaw.com), The Smiley IP Law Group, P.A., co-counsel for Plaintiffs, 200 South Andrews Avenue, Suite 100, Fort Lauderdale, FL 33301; Bruce H. Wilson, Esq., co-counsel for Defendants, 789 West Market Street, Akron, OH 44303 (BruceWilsonEsq@aol.com); Jamie Clark Dixon, Esq., Wadsworth Huott LLP, co-counsel for Defendants, 221 W. Oakland Park Blvd., Fort Lauderdale, Florida 33311, jcd@wadsworth-law.com; Ronald S. Kopp, Esq., Roetzel & Andress, co-counsel for Defendants, 222 South Main Street, Suite 400, Akron, OH 44308, rkopp@ralaw.com.

/s/ Robert E. Pershes
Robert E. Pershes, Esq.
Florida Bar No.: 301906
Vijay G. Brijbasi, Esq.
Florida Bar No.: 15037
Roetzel & Andress
350 E. Las Olas Blvd., Suite 1150
Fort Lauderdale, Florida 33301
Telephone: (954) 462-4150
Facsimile: (954) 462-4260
Email: rpershes@ralaw.com
    Serve.rpershes@ralaw.com
and
Ronald S. Kopp, Esq. (0004950)
ROETZEL & ANDRESS
222 South Main Street, Suite 400
Akron, Ohio  44308
Telephone: (330) 376-2700
Facsimile: (330) 376-4577